UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH W. HUNT, an individual; and KAREN M. DUNMORE, an individual,<br><br>Defendants. | No. 2:15-cv-00336-TLN-DB<br><br>**FINAL PRETRIAL ORDER**<br><br>TRIAL DATE: November 27, 2017<br>TIME: 9:00 a.m. |

The parties filed their Joint Pretrial Conference Statement on August 30, 2017. (ECF No. 59.) Based on that filing, the Court makes the following findings and orders:

**I.    JURISDICTION / VENUE**

This action arises pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of costs and interests.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Karen Dunmore resides in this District.

///

1

## II. SETTLEMENT CONFERENCE

The Court has ordered a settlement conference in this matter. (ECF No. 61.)

## III. NON-JURY BENCH TRIAL

The parties requested a non-jury bench trial.

## IV. UNDISPUTED FACTS

The parties do not dispute the following facts.

1. On or about October 22, 1999, Karen Dunmore and Sidney B. Dunmore signed a Letter of Intent. The Letter of Intent included a phased accumulation of community property, and referenced a "Marital Agreement" to be drafted and executed by Karen Dunmore and Sidney B. Dunmore after marriage. No such "Marital Agreement" was ever drafted or executed.

2. One day later, on October 23, 1999, Karen Dunmore and Sidney B. Dunmore married.

3. On or about December 15, 2005, Travelers entered into a General Agreement of Indemnity ("Indemnity Agreement") with Sidney B. Dunmore, whereby Sidney B. Dunmore agreed to indemnify Travelers as a material inducement for Travelers to provide bonds ("Bonds") on behalf of multiple companies in which Sidney B. Dunmore had an ownership interest.

4. Pursuant to the Indemnity Agreement, Sidney B. Dunmore granted Travelers a security interest in his personal property, specifically including "general intangibles" and all proceeds thereof.

5. Pursuant to the Indemnity Agreement, Sidney B. Dunmore granted Travelers broad collection rights including, *inter alia,* (1) the right to file a UCC-1 financing statement to perfect Travelers' security interest in "general intangibles" and any proceeds thereof; (2) the right to take possession of "general intangibles" and any proceeds thereof through the exercise of an irrevocable power of attorney; and (3) the right to collect any sums that may become due Sidney B. Dunmore and to endorse in his name to cause such funds to be made payable to Travelers.

6. After execution of the Indemnity Agreement, Travelers received a multitude of claims against the Bonds, for which Sidney B. Dunmore was obligated to indemnify Travelers under the Indemnity Agreement.

7. On October 29, 2007, Travelers filed UCC-1 financing statements regarding Travelers' security interest in, among other collateral assets held by Sidney B. Dunmore, his right to "general intangibles" and any and all proceeds thereof. Travelers' UCC-1 financing statements have been renewed and are currently effective.

8. On October 30, 2007, Travelers sent Sidney B. Dunmore a letter demanding that he defend, indemnify and hold harmless Travelers against the claims and losses arising out of the Bonds.

9. Sidney B. Dunmore filed a U.S. Individual Tax Return for tax year 2008. This return was filed as Married Filing Separately.

10. Sidney B. Dunmore filed an amended U.S. Individual Income Tax Return for tax year 2008. This return was also filed as Married Filing Separately.

11. On or about December 15, 2009, Sidney B. Dunmore filed a Form 1045 *Application for Tentative Refund* with the Internal Revenue Service, pursuant to which he claimed a tax refund in the amount of $3,962,263 ("the Tax Refund") based on carryback losses for the tax year ending on December 31, 2004.

12. In Sidney B. Dunmore's *Application for Tentative Refund*, he sought a decrease in tax for year 2003 in the amount of $6,526,872, and a decrease in tax for year 2004 of $3,962,263.

13. Sidney B. Dunmore filed both the 2003 and 2004 Income Tax Returns as Married Filing Separately.

14. For tax year 2004, the tax owed by Sidney B. Dunmore was reduced from $7,406,099 to $3,443,836. The difference between these amounts of taxes owed is the $3,962,263 amount sought in Sidney B. Dunmore's Form 1045 *Application for Tentative Refund*.

15. On or about February 17, 2010, the United States of America paid Sidney B. Dunmore a tax refund, in part, of $3,962,263. Sidney B. Dunmore obtained the $3,962,263 Tax Refund through application of a Net Operating Loss carryback to year 2004. Sidney B. Dunmore's receipt of $3,962,263 results from a Net Operating Loss carryback to offset taxable income in 2004. The decrease in year 2004 taxable income resulted in a recovery of income from nonpassive income sources owned by Sidney B. Dunmore. Such nonpassive income sources were

not owned by Karen Dunmore. The Net Operating Loss asserted by Sidney B. Dunmore in his 2008 Amended U.S. Individual Tax Return was not a loss incurred by Karen Dunmore.

16. On February 17, 2010, Sidney B. Dunmore opened an account at Community 1st Bank. Sidney B. Dunmore then deposited the Tax Refund in the amount of $3,962,263 in the account at Community 1st Bank.

17. On or about February 17, 2010, Sidney B. Dunmore transferred $500,000 of the Tax Refund from the account at Community 1st Bank to Karen Dunmore. A cashier's check payable to Karen Dunmore was drawn from Sidney B. Dunmore's Community 1st Bank account in the amount of $500,000.

18. Karen Dunmore received the $500,000 cashier's check from Sidney B. Dunmore. Karen Dunmore deposited that cashier's check in a bank. The $500,000 was deposited into an account that Karen Dunmore had control over. Karen Dunmore is the sole owner of the $500,000 transfer, or the remaining amount. Karen Dunmore stated that she does not have any joint accounts with Sidney B. Dunmore. Karen Dunmore never had ownership in any of Sidney B. Dunmore's business entities.

19. The $500,000 transferred on or about February 17, 2010 from Sidney B. Dunmore to Karen Dunmore came from Sidney B. Dunmore's Tax Refund in the amount of $3,962,263.

20. Travelers did not consent to Sidney B. Dunmore's February 17, 2010 transfer of $500,000 of the Tax Refund to Karen Dunmore.

21. Travelers did not discover the existence of the Tax Refund, or Sidney B. Dunmore's payment of portions of the Tax Refund to Karen Dunmore, until October 2012, when Sidney B. Dunmore produced documents evidencing this transaction in connection with discovery proceedings under a separate lawsuit between Travelers and Sidney B. Dunmore, titled *Travelers Casualty and Surety Company of America v. Sidney B. Dunmore, et al.,* United States District Court, Eastern District of California, Case No. 2:07-CV-02493 ("the Indemnity Action"). Prior to that time, Sidney B. Dunmore refused to turn over information regarding the existence of the Tax Refund and the use of proceeds from the Tax Refund until the Court resolved Travelers' motions to compel and related litigation culminating in sanctions for Sidney B. Dunmore.

22. On January 12, 2015, Travelers sent Karen Dunmore a letter demanding that she return to Travelers the $500,000 in Tax Refund proceeds she received from Sidney B. Dunmore. Karen Dunmore received Travelers' letter demanding return of the $500,000, and refused to return the $500,000 or any portion thereof to Travelers.

23. On February 9, 2015, Travelers filed its Complaint (ECF No. 1) in this action.

24. On March 29, 2017, the Court entered Judgment in the Indemnity Action in favor of Travelers in the amount of $15,599,237.28.

25. Travelers incurred, and will continue to incur, costs and expenses incurred in connection with investigating, litigating, and enforcing its rights under the Indemnity Agreement, including but not limited legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses.

## V. **DISPUTED FACTUAL ISSUES**

a. Karen Dunmore disputes Travelers' claim that no phased accumulation of community property occurred as referenced in the Letter of Intent.

b. Karen Dunmore disputes Travelers' claim that its UCC-1 financing statements, and all renewals thereof, perfected Travelers' security interest in, among other collateral assets held by Sidney B. Dunmore, his right to "general intangibles" and any and all proceeds thereof.

c. Karen Dunmore disputes Travelers' claim that as of October 29, 2007, Travelers had a perfected security interest in Sidney B. Dunmore's right to receive any and all tax refunds from the United States of America, as well as any and all proceeds thereof.

d. Karen Dunmore disputes Travelers' claim that on or about October 30, 2007, Karen Dunmore became aware that Travelers had a right to and was entitled to immediate possession of Sidney B. Dunmore's money and assets in excess of $500,000.

e. Karen Dunmore disputes Travelers' claim that on or about October 30, 2007, Karen Dunmore was aware of Travelers' security interest in Sidney B. Dunmore's money and assets in excess of $500,000.

f. Karen Dunmore disputes Travelers' claim that all taxes owed were the separate liability of Sidney B. Dunmore both before and after the carryback.

1         g.        Karen Dunmore disputes Travelers' claim that the original 2004 income tax owed was Sidney B. Dunmore's separate liability.

        h.        Karen Dunmore disputes Travelers' claim that Pursuant to the Indemnity Agreement, Travelers had the right to take possession of the Tax Refund.

        i.        Karen Dunmore disputes Travelers' claim that Karen Dunmore is the sole owner of the $500,000 transferred by Sidney B. Dunmore.

        j.        Karen Dunmore disputes Travelers' claim that Karen Dunmore is not a "good faith purchaser" with regards to the $500,000 transfer or Sidney B. Dunmore's Tax Refund.

        k.        Karen Dunmore disputes Travelers' claim that at all material times before, during and after the deposit of the Tax Refund in Sidney B. Dunmore's checking account at Community 1st Bank on February 17, 2010, Travelers held a properly perfected security interest in the Tax Refund, including without limitation Sidney B. Dunmore's right to receive the Tax Refund, as well as the proceeds of the Tax Refund once deposited in Sidney B. Dunmore's checking account at Community 1st Bank.

        l.        Karen Dunmore disputes Travelers' claim that Sidney B. Dunmore did not receive anything from Karen Dunmore for the transfer of $500,000.

        m.        Karen Dunmore disputes Travelers' claim that Travelers is informed and believes that at the time of the $500,000 transfer, Sidney B. Dunmore's debts exceeded his assets, and he did not have money sufficient to pay his debts as they came due.

        n.        Karen Dunmore disputes Travelers' claim that it did not discover the $500,000 transferred to Karen Dunmore until October 2012.

        o.        Karen Dunmore disputes Travelers' claim that Sidney B. Dunmore and/or Karen Dunmore fraudulently concealed the Tax Refund received by Sidney B. Dunmore.

        p.        Karen Dunmore disputes Travelers' claim that Sidney B. Dunmore and/or Karen Dunmore fraudulently concealed the transfer of funds from the Tax Refund to Karen Dunmore.

        q.        Karen Dunmore disputes Travelers' claim that it was damaged by Karen Dunmore's acceptance of the $500,000 and her refusal to return the $500,000 to Travelers, and that such damage was caused by Karen Dunmore.

r. Karen Dunmore disputes Travelers' claim that Sidney B. Dunmore's transfer of $500,000 to Karen Dunmore, rather than paying such funds to Travelers, Karen Dunmore's acceptance of the $500,000 and Karen Dunmore's refusal to return the $500,000, were substantial factors in the harm that Travelers suffered.

s. Karen Dunmore disputes Travelers' claim that Sidney B. Dunmore transferred the Tax Refund proceeds to Karen Dunmore with the intent to hinder, delay, or defraud Travelers.

t. Karen Dunmore disputes Travelers' claim that Karen Dunmore was aware that Sidney B. Dunmore, among others, planned to convert and fraudulently transfer assets, including without limitation the Tax Refund proceeds to place them beyond Travelers' reach.

u. Karen Dunmore disputes Travelers' claim that Karen Dunmore agreed and conspired with Sidney B. Dunmore, intended the foregoing wrongful acts be committed, accepted the above-named assets received from Sidney B. Dunmore, and refused to return such assets in furtherance of the plan to convert and fraudulently transfer assets.

v. Karen Dunmore disputes Travelers' claim that Karen Dunmore engaged in numerous transactions, including without limitation those identified above, accepted the $500,000 received from Sidney B. Dunmore, and refused to return the $500,000 with the intent to hinder, delay, or defraud Travelers.

w. Karen Dunmore disputes Travelers' claim that Travelers suffered harm from Karen Dunmore's wrongful conduct, and the transfers described above were substantial factors in causing harm to Travelers.

x. Karen Dunmore disputes Travelers' claim that at the time of the $500,000 transfer to Karen Dunmore, Sidney B. Dunmore was insolvent.

y. Karen Dunmore disputes Travelers' claim that Travelers has no adequate remedy at law for the injuries currently being suffered.

z. Karen Dunmore disputes Travelers' claim that Sidney B. Dunmore is insolvent and is attempting to avoid obligations to Travelers through the conversion and fraudulent transfer of other assets.

aa. Karen Dunmore disputes Travelers' claim that Travelers faces irreparable harm

1 should this wrongful conduct continue.

bb. Karen Dunmore disputes Travelers' claim that Karen Dunmore must be enjoined from further transfers of the $500,000 transferred, or other assets in which Travelers holds a beneficial interest.

cc. Karen Dunmore disputes Travelers' claim that a constructive trust must be imposed on any converted money or property in possession of Karen Dunmore and over funds and assets remaining in possession of Karen Dunmore for the $500,000 transferred.

dd. Travelers disputes Karen Dunmore's claim that she made an oral agreement with Sidney B. Dunmore, whereby Sidney B. Dunmore offered Karen Dunmore to quit her job in exchange for $10,000 per month in order for her to be available to further his business interests through social activities.

**VI. DISPUTED EVIDENTIARY ISSUES**

a. Karen Dunmore contends she made an oral agreement with Sidney B. Dunmore, whereby Sidney B. Dunmore offered Karen Dunmore to quit her job in exchange for $10,000 per month in order for her to be available to further his business interests through social activities. While there is no writing, Karen Dunmore expects to present sufficient extrinsic evidence to support the existence of the agreement. Karen Dunmore expects Travelers to oppose these efforts. Travelers disputes the relevance of these contentions.

**VII. SPECIAL FACTUAL INFORMATION IN CERTAIN ACTIONS**

a. Travelers disputes the contractual allegations made by Karen Dunmore.

b. Travelers disputes that Karen Dunmore carried out the terms of any contract alleged by Karen Dunmore. The evidence shows that the terms of Karen Dunmore's alleged contract, to the extent that such a contract was effective, were breached.

c. Travelers contends that its rights to the Tax Refund, including the $500,000 transferred to Karen Dunmore, had and have priority over any interest Karen Dunmore had or has to either the Tax Refund or the $500,000 transferred to her.

///

///

**VIII. WITNESSES**

The parties list the following prospective witnesses:

a. Sidney B. Dunmore, 9220 Royal Crest Court, Granite Bay, CA 95746;

b. William Niemi, 9833 Wexford Circle, Granite Bay, CA 95746;

c. Beth Niemi, 9833 Wexford Circle, Granite Bay, CA 95746;

d. James L. Leet, 555 Capitol Mall, Suite 1500, Sacramento, CA 95814;

e. Doug Strough, Williams & Olds CPAs, 900 University, Suite 100, Sacramento, CA;

f. William West, Shappell Properties, Inc., 8383 Wilshire Boulevard, Suite 700, Beverly Hills, CA 90211;

g. Jason Bellas, Winn Communities, 3001 I Street, Suite 300, Sacramento, CA 95816;

h. Keith Flanagan, Travelers Casualty and Surety Company of America, 215 Shuman Boulevard, Suite 171, Naperville, IL 60563;

i. Karen Dunmore, 9220 Royal Crest Court, Granite Bay, CA 95746;

j. Michael R. Huhn, 135 Town & Country Drive, Danville, CA 94526. Mr. Huhn may provide expert testimony

A. No other witnesses will be permitted to testify unless: (1) the party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Final Pretrial Conference, or (2) the witness was discovered after the Final Pretrial Conference and the proffering party makes the showing required in section B below.

B. Upon the post-pretrial discovery of witnesses, the attorney shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses so that the Court may consider at trial whether the witnesses shall be permitted to testify. The evidence will not be permitted unless: (1) the witnesses could not reasonably have been discovered prior to pretrial; (2) the Court and opposing counsel were promptly notified upon discovery of the witnesses; (3) if time permitted, counsel proffered the witnesses for deposition; and (4) if time did not permit, a reasonable summary of the witnesses' testimony was provided by opposing counsel.

///

9

## IX. EXHIBITS-SCHEDULES AND SUMMARIES

The parties list the following prospective exhibits:

a. Statement of Unsegregated Debts, dated 10/12/1999;

b. Letter of Intent of Desire of Marriage, dated 10/23/1999;

c. General Agreement of Indemnity, dated 12/15/2005;

d. Addendum "A" to General Agreement of Indemnity, dated 12/15/2005;

e. Limited Liability and Net Worth Rider to General Agreement of Indemnity, dated 12/15/2005;

f. UCC financing Statement, 07-7134845291, Filed 10/29/2007, and related documents including renewals;

g. General Agreement of Indemnity, dated 9/20/2004;

h. UCC financing Statement, 07-7134844301, Filed 10/29/2007, and related documents including renewals;

i. Stipulation to Judgment and Judgment in the Indemnity Action;

j. Documents produced in the Indemnity Action, including, but not limited to tax returns and related information, bank records produced in the Indemnity Action and documents indicating transfers of funds in the Indemnity Action;

k. Sidney B. Dunmore's 2008 federal income tax return and Sidney B. Dunmore's 2008 amended federal income tax return;

l. Checks, bank statements, check stubs and related documents from Sidney B. Dunmore's bank account at Community 1st Bank in Granite Bay;

m. Sidney B. Dunmore's 2003 and 2004 federal income tax returns;

n. Documents produced by Karen Dunmore in the instant action;

o. Documents produced by Travelers in the instant action;

p. Documents evidencing the $500,000 transfer from Sidney B. Dunmore to Karen Dunmore on or about February 17, 2010;

q. Computer printouts, BCMS reports, and accounting information regarding Travelers' losses, costs, fees, expenses and recoveries related to bond claims on which Sidney B.

1 | Dunmore is an indemnitor;
2 | r. Underwriting documents related to bond issuance and indemnity agreements between Travelers and Sidney B. Dunmore;
3 | s. Correspondence between Travelers and Sidney B. Dunmore regarding bond claims and attempts to seek indemnity, defense, and collateral security including Travelers' October 30, 2007 letter to Sidney B Dunmore;
4 | t. Correspondence between Travelers and Karen Dunmore regarding request for payment including Travelers' January 12, 2015 letter to Karen Dunmore; and
5 | u. Filings, orders, discovery, correspondence and documents related to *In Re Dunmore Homes, Inc.,* United States Bankruptcy Court, Eastern District of California, case no. 08-20569 and related proceedings, including adversary proceedings

**Plaintiff's exhibits shall be listed numerically. Defendant's exhibits shall be listed alphabetically.** The parties shall use the standard exhibit stickers provided by the Court Clerk's Office: pink for Plaintiff and blue for Defendant. After three letters, note the number of letters in parenthesis (i.e., "AAAA(4)") to reduce confusion during the trial. All multi-page exhibits shall be fastened together and each page within the exhibit shall be numbered. All photographs shall be marked individually. The list of exhibits shall not include excerpts of depositions which may be used to impeach witnesses.

Each party may use an exhibit designated by the other. In the event that Plaintiff and Defendant offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is first identified. The Court cautions the parties to pay attention to this detail so that all concerned will not be confused by one exhibit being identified with both a number and a letter.

A. The Court will not permit introduction of other exhibits unless: (1) the party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Scheduling Conference, or (2) the exhibit was discovered after the Pretrial Scheduling Conference and the proffering party makes the showing required in paragraph "B" below.

B. Upon the post-pretrial discovery of exhibits, the attorneys shall promptly inform

the Court and opposing counsel of the existence of such exhibits so that the Court may consider at trial their admissibility. The exhibits will not be received unless the proffering party demonstrates: (1) the exhibits could not reasonably have been discovered prior to pretrial; (2) the Court and counsel were promptly informed of their existence; (3) counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel. If the exhibit(s) may not be copied, the proffering counsel must show that he or she has made the exhibit(s) reasonably available for inspection by opposing counsel.

      C.     As to each exhibit, each party is ordered to exchange a copy identical to the Court's copy, or other reproduction of the exhibit(s) in a three-ring binder(s) **no later than two weeks before trial**.

      D.     The attorney or representative for each party is directed to present one copy of the exhibit(s) and exhibit list to the Court Clerk's Office, **no later than 3:00 p.m., two weeks before trial**, or at such earlier time as may be ordered by the Court. The Court shall be presented with a copy of the exhibit(s) in a 3-ring binder(s) with a side tab identifying each exhibit by number or letter. Each binder shall be no larger than three inches in width and have an identification label on the front and side panel.

      E.     It is the duty of counsel to ensure that witnesses have access to a copy of exhibit(s) if needed.

**X.     DISCOVERY DOCUMENTS**

      A.     <u>Lodging Deposition Transcripts and Video Files</u>

It is the duty of counsel to ensure that any deposition transcripts which are to be used at trial have been lodged with the Clerk of the Court **one week prior to trial**. Counsel are cautioned that a failure to discharge this duty may result in the Court precluding use of the deposition or imposition of such other sanctions as the Court deems appropriate.

      B.     <u>Use of Depositions</u>

The parties in Paragraph 12 of their pretrial statement have already identified portions of some of the depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal). The parties are ordered to file with the Court and

exchange between themselves **no later than one week before trial** a statement designating any other portions of depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal).

        C.     <u>Interrogatories and Admissions</u>

The parties are ordered to file with the Court and exchange between themselves **no later than one week before trial** a statement designating portions of Answers to Interrogatories and Admissions which the respective parties intend to offer or read into evidence (except for portions to be used only for impeachment or rebuttal).

## XI. <u>FURTHER DISCOVERY OR MOTIONS</u>

Pursuant to the Court's Pretrial Scheduling Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Final Pretrial Conference. That Order is confirmed. The parties are free to engage in informal agreements regarding discovery and law and motion matters. However, any such agreements will not be enforceable in this Court.

## XII. <u>MOTIONS IN LIMINE</u>

The parties' motions in limine are due no later than 5 p.m. on November 6, 2017. Responses are due no later than 5 p.m. on November 13, 2017. Replies are due on or before November 20, 2017.

## XIII. <u>AUDIO/VISUAL EQUIPMENT</u>

The parties are required to file electronically a joint request to the Courtroom Deputy Clerk, Michele Krueger, **twenty-one (21) days before trial**, if they wish to reserve and arrange for orientation with all parties on the Court's mobile audio/visual equipment for presentation of evidence. There will be one date and time for such orientation.

## XIV. <u>DATE AND LENGTH OF TRIAL</u>

Trial is scheduled for **Monday, November 27, 2017**. The estimated length of trial is approximately three (3) days. Counsel are to email Michele Krueger, Courtroom Deputy Clerk, at mkrueger@caed.uscourts.gov or call 916-930-4163 by **November 6, 2017,** to ascertain the status of the trial date.

## XV. OBJECTIONS TO PRETRIAL ORDER

Each party is granted **fourteen (14) days** from the entry of this Final Pretrial Order to object to any part of the order or to request augmentation to it. A Final Pretrial Order will be modified only upon a showing of manifest injustice. If no objection or modifications are made, this Order will become final without further order of the Court and shall control the subsequent course of the action, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: September 8, 2017

Troy L. Nunley
United States District Judge